UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LAWRENCE COCKILL, ET AL<br><br>Plaintiffs,<br><br>v.<br><br>NATIONWIDE PROPERTY & CASUALTY INSURANCE COMPANY<br><br>Defendant. | No. 3:18cv254 (MPS) |

**RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiffs Lawrence and Karen Cockill (collectively, "the Cockills") filed this action in state court against their homeowner's insurance provider, Nationwide Property & Casualty Insurance Company ("Nationwide"), seeking damages for its failure to provide coverage for damage to the basement walls of a residence they own. ECF No. 1-1. Nationwide removed the case to this court on February 9, 2018. ECF No. 1. On April 2, 2018, Nationwide moved to dismiss the case, arguing that the alleged loss was not covered by the insurance policy. ECF No. 14. For the reasons set forth below, the motion is GRANTED.

**I.**     **Factual Allegations**

According to the allegations in the complaint, the Cockills own a property located at 68 Webster Road, Union, Connecticut ("the property"). ECF No. 1-1 ¶ 1. Nationwide has insured the property at all relevant times. *Id*. ¶ 3. The Cockills made all required insurance payments. *Id*. ¶ 4.

1

On an unspecified date, the Cockills "observed visible cracking in the concrete of their home." *Id.* ¶ 5. On January 20, 2016, a structural engineer inspected the basement of the property. *Id.* ¶ 6. The results of this inspection "indicated that there was a chemical reaction in the concrete and that the concrete would have to be replaced." *Id.* ¶ 7. The Cockills made a timely claim for coverage under their homeowner's insurance policy. *Id.* ¶ 9. On November 2, 2016, Nationwide denied coverage. *Id.* ¶ 14.

The Cockills allege that the chemical reaction "substantially impairs the structural integrity of the dwelling," *Id.* ¶ 8, and "losses due to chemical reaction are not excluded from policy coverage," *Id.* ¶10. They further allege that they are "covered for 'Collapse' of the basement walls," *Id.* ¶ 11, "for any ensuing loss as caused by the condition of the premises," *Id.* ¶ 12, and "for reasonable repairs as caused by the condition of the premises," *Id.* ¶ 13. Finally, the Cockills allege that the "Defendant has breached its agreement with the Plaintiffs" by failing to provide coverage under the policy. *Id.* ¶ 15.

## II.     Legal Standards

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I take the plaintiffs' factual allegations in the complaint "to be true and [draw] all reasonable inferences in" their favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court need not accept legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding a Rule 12(b)(6) motion, I may consider documents attached to, integral to, or incorporated by reference in the complaint. *See* Fed. R. Civ. P. 10(c); *Chambers v. Time Warner*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotation marks omitted). Here, I consider the insurance policy, which is attached to Nationwide's motion to dismiss. ECF No. 15-2.

**III. Discussion**

**A. Collapse Coverage**

The Cockills claim they are entitled to coverage under the collapse provision of their insurance policy. ECF No. 1-1 ¶ 11. The policy defines collapse as the "abrupt falling down or caving in" of any structure "with the result that it cannot be occupied for its intended purpose." ECF No. 15-2 at 18. It further states that a structure is not in a state of collapse if it is still standing, even if it is "in danger of falling down or caving in," or "shows signs of . . . cracking." *Ibid*. And finally, the policy requires the collapse to be "sudden and accidental." *Ibid*.

The Cockills rely on the Second Circuit's decision in *Dalton v. Harleysville Worcester Mutual*, 557 F. 3d. 88 (2nd Cir. 2009), to argue that the "term collapse is ambiguous in light of the qualifiers made by the provisions in the policy." ECF No. 20 at 3. However, their reliance on *Dalton* is misplaced. As this Court has noted, the policy at issue in *Dalton* "did not define 'collapse' to have any temporally abrupt quality, and the Court had to look to unsettled New York law to determine the meaning of 'collapse.'" *England v. Amica Mut. Ins. Co.*, 2017 WL 3996394, at *5 (D. Conn. Sept. 11, 2017). In this case, by contrast, the insurance policy expressly defines collapse as the "abrupt falling down or caving in" of a structure, and later

reiterates that the collapse must be "sudden and accidental." ECF No. 15-2 at 18. Indeed, the *Dalton* court itself noted that a policy with such "express definitional terms" would present a different issue altogether. *Dalton*, 557 F.3d 88, 92 n.1 (explaining that a policy defining collapse as "an abrupt falling down or caving in" and excluding coverage for standing structures that show "evidence of cracking" provides "a definition of collapse agreed to by the parties, which addresses the ambiguity"). Because the language in the Cockills' policy is unambiguous, unlike the language in *Dalton*, it "must be accorded its natural and ordinary meaning." *Connecticut Med. Ins. Co. v. Kulikowski*, 942 A.2d 334, 338 (Conn. 2008).

"The ordinary meaning of the word 'abrupt' is 'characterized by or involving action or change without preparation or warning.'" *England*, 2017 WL 3996394, at *5 (quoting *Merriam Webster's Collegiate Dictionary* (10th ed. 1994)). And the term 'sudden' has "a temporal quality," which requires the event in question to occur "quickly" or "abruptly." *Adams v. Allstate Ins. Co.*, 276 F. Supp. 3d 1, 4 (D. Conn. 2017) (quoting *Buell Indus., Inc. v. Greater New York Mut. Ins. Co.*, 791 A.2d 489 (Conn. 2002)). I construe the allegations in the complaint in the light most favorable to the Cockills—as I must at the motion to dismiss stage—and find that they do not allege an "abrupt" or "sudden" collapse. Rather, the Cockills point to a "chemical reaction in the concrete" that "substantially impairs the structural integrity of the building." ECF No. 1-1 ¶¶ 7-8. In their opposition to Nationwide's motion to dismiss, the Cockills further allege that "one of the after effects of the ongoing chemical reaction to the home is that it is collapsing" and that the walls "have given way and [are] essentially caving in." ECF No. 20 at 3. All of these allegations suggest only a gradual deterioration rather than a "sudden" or "abrupt" collapse as required by the policy.

Moreover, the policy specifies that collapse coverage does not apply to a standing structure at all, even if it is "in danger of falling down or caving in" or "shows signs of . . . cracking." ECF No. 15-2 at 18. Although the Cockills suggest that "the structure will eventually collapse" due to the chemical reaction, ECF No. 20 at 4, they do not allege that the structure is no longer standing or that it cannot be occupied for its intended purpose at present. Indeed, the first paragraph of the complaint alleges that the Cockills continue to reside at the property. ECF No. 1-1 ¶ 1. And finally, the suggestion that the cracks in the walls constitute current evidence of "caving in" and "collapse," *Id.* at 3, is unavailing as Nationwide expressly excludes standing structures with mere signs of cracking from collapse coverage, ECF No. 15-2 at 18.

In sum, the Cockills have not alleged an abrupt or sudden collapse, nor have they alleged that the structure is no longer standing or habitable for its intended purpose. As such, they have not alleged that they are entitled to coverage under the collapse provisions of their insurance policy.

### B. Coverage for Losses Due to Chemical Reaction

The Cockills also allege that "losses due to chemical reaction are not excluded from policy coverage," ECF No. 1-1 ¶ 10, and therefore replacing the concrete to prevent the chemical reaction from further damaging the structure is covered, ECF No. 20 at 4. It appears that the Cockills are referring to Section I of the insurance policy that lists a series of "[p]roperty exclusions." The relevant policy language reads as follows:

> 3. We do not cover loss to property described in Coverages A and B resulting directly from any of the following:
> . . .
> (f) (1) wear and tear, marring, deterioration;
> (2) inherent vice, latent defect, mechanical breakdown;
> (3) smog, rust;
> . . .
> (5) release, discharge, or dispersal of contaminants or pollutants;

5

> (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings.

ECF No. 15-2 at 23-24. Although loss from "chemical reaction" is not specifically listed among the exclusions, this theory of coverage is foreclosed.

First, many of the exclusions listed in this section are broad enough to include chemical reactions. For example, "wear and tear," "deterioration," "inherent vice," "latent defect," "rust," and "cracking" are all terms that may encompass the "chemical reaction" described in the complaint. *See id*. at 24. Second, the only observed manifestation of the chemical reaction that is identified in the complaint is the "cracking in the basement walls." ECF No. 1-1 ¶ 6; *see England*, 2017 WL 3996394, at *8 (finding in similar case that "the chemical reaction itself, absent any physical manifestation in the property marking a change to an unsatisfactory state, is not" a "loss" under the policy). However, loss from cracking is excluded under the collapse provisions, ECF No. 15-2 at 18 (providing coverage for collapse and noting that a structure is not in a state of collapse if it is standing "even if it shows signs of . . . cracking"), as well as the "[p]roperty exclusions," *id.* at 23-24 (excluding loss from "cracking" of "foundations [and] walls"). As I concluded in the *England* case, "[i]t does not matter whether the originating event behind the cracking and deterioration was a chemical reaction; the exclusions in the Policies make no exception for losses for which the cause is itself a product of a chemical reaction. Indeed, many of the loss-producing causes listed in the exclusions either are the product of chemical reactions or are broad enough to include chemical reactions." 2017 WL 3996394, at *8. As noted above, the same is true of the loss-producing causes listed in the exclusions in the Nationwide policy.

### C. Coverage for Reasonable Repairs

Alternatively, the Cockills allege that they "are covered for reasonable repairs as caused by the condition of the premises." ECF No. 1-1 ¶ 13. They point to the "Additional Coverages" portion of the policy stating that Nationwide "will pay reasonable cost you incur for necessary repairs made solely to protect covered property from further damage if the peril causing the loss is covered." ECF No. 20 at 4; ECF No. 15-2 at 16. They further argue that because "the structure will eventually collapse," and the chemical reaction "is not excluded under the policy," any steps taken to prevent the chemical reaction and collapse are covered.

This argument is unsuccessful. The policy states that repairs to prevent further damage are covered "if the peril causing the loss is covered." ECF No. 15-2 at 16. In this case, because the "peril[s] causing the loss"—the alleged chemical reaction and cracking—are not covered, there is no additional coverage for replacing the concrete. *See Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, 287 F. Supp. 3d 153, 162 (D. Conn. 2017) (finding no coverage for reasonable repairs when the policy provided for repairs "to protect covered property that is damaged by Perils Insured Against" and the plaintiffs did not identify a covered claim); *Zamichiei v. CSAA Fire & Cas. Ins. Co.*, 2018 WL 950116, at *9 (D. Conn. 2018) ("The Property has not been 'damaged by a Peril Insured Against,' and thus the Additional Coverage cannot be reasonably read to include the loss at issue here."); *Sanzo v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2018 WL 1749967, at *6 (Conn. Super. Ct., 2018) (explaining that when a policy covers "repairs to protect covered property from further loss following a loss we cover," and "the essential prerequisite for a 'loss we cover' is not satisfied," then "the reasonable repairs coverage does not apply").[1]

---

[1] The Cockills allege, in their complaint, that they "are covered for any ensuing loss as caused by the condition of the premises." ECF No. 1-1 ¶ 12. However, they do not point to specific policy language regarding ensuing loss in their complaint, and they do not address this claim in their opposition brief. I thus treat the claim as having been abandoned. *See Lovitch v. County of Orange*, 2013 WL 3805142, at *5 (S.D.N.Y., July 19, 2013).

## IV. Conclusion

Because I find that the insurance policy does not cover the losses alleged in the complaint, the Cockills have failed to allege a claim for breach of contract, and Nationwide's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Dated at Hartford, Connecticut this 27th day of November, 2018.

/s/ MICHAEL P. SHEA_____
Michael P. Shea
United States District Judge